**The below described is SIGNED.**

**Dated: April 12, 2010**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



---

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 09-28879 |
|---|---|
| Coby R. Duffin and<br>Jeanie Marie Duffin<br><br>Debtors. | Chapter 7<br><br>Judge R. Kimball Mosier |

## MEMORANDUM DECISION

This matter initially came before the Court on the Objection to Exemption (Objection) filed by Stephen W. Rupp (Trustee), the Chapter 7 trustee in this case. The Court denied the Trustee's Objection. The Trustee filed a motion under Rule 60 of the Federal Rules of Civil Procedure for relief from the Court's order denying the Trustee's Objection and a motion under Rule 59 of the Federal Rules of Civil Procedure to alter or amend the Court's order and for a new hearing. The Court granted the Trustee's motion for a new hearing. For the reasons set forth herein, the Court denies the Trustee's motion under Rule 60 for relief from the Court's order denying the Trustee's Objection and the motion under Rule 59 to alter or amend the Court's order.

**FACTS**

Coby R. Duffin and Jeanie Marie Duffin (Debtors) filed a Chapter 7 bankruptcy petition on August 20, 2009 (Petition Date). On the Petition Date, the Debtors owned two State Farm Insurance Company universal life insurance policies (Policies). One of the Policies is owned by Coby R. Duffin and is listed on the Debtors' "Schedule B - Personal Property" at a value of $4,000.00. The other policy is owned by Jeanie Marie Duffin and is listed at a value of $4,500.00. The Debtors claimed the full value of the Policies exempt in their "Schedule C - Property Claimed As Exempt".

On October 8, 2009, the Trustee timely objected to the Debtors' claimed exemption of the Policies. The Trustee's Objection argued that the Debtors testified at the first meeting of creditors that during the year prior to the Petition Date they made premium payments on the Policies totaling $300.00 per month for a total of $3,600.00, and that under Utah Code Annotated §78B-5-505(1)(a)(xiii) (the Statute), the Debtors are not entitled to an exemption of payments made on the Policies during the one-year period prior to the Petition Date.

The Debtors' response to the Trustee's Objection states that at the first meeting of creditors, they erroneously overstated the amount of the contract payments on the Policies and that the Debtors only paid $226.00 per month for a total of $2,712.00 during the one-year period prior to the Petition Date. The Debtors contend that payments made on universal life policies consist of separate components: 1) a term life component plus administrative fees; and 2) an investment component with an accruing cash value, and that only payments made on the investment component should be excluded from their claimed exemption. At the hearing, the

Trustee conceded that the Debtors only paid $226.00 per month on the Policies for a total paid during the one-year period of $2,712.00.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O), and 1334.  Venue is appropriate under 28 U.S.C. § 1408(1).

## ANALYSIS

**I.    The Utah Insurance Policy Exemption Statute.**

Under 11 U.S.C. § 522(b)[1], a state may determine that state law exemptions apply in bankruptcy cases and preclude debtors from claiming federal exemptions in bankruptcy cases. The State of Utah did this.  *See* Utah Code Annotated § 78B-5-513.  The Debtors claimed the Policies exempt under Utah Code Annotated § 78B-5-505, which provides that an individual is entitled to exemption of proceeds and avails of unmatured life insurance policies.  Utah Code Annotated § 78B-5-505(1)(a)(xiii) reads as follows:

(1)(a) An individual is entitled to exemption of the following property:

. . . .

(xiii) proceeds and avails of any unmatured life insurance contracts owned by the debtor or any revocable grantor trust created by the debtor, excluding any payments made on the contract during the one year immediately preceding a creditor's levy or execution[.]

---

[1] Unless otherwise noted, references to Code refers to Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

3

To resolve the Trustee's Objection, this Court must interpret the Statute under the laws of the State of Utah.  When a federal court is called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, it must endeavor to predict how that high court would rule.  The decision of an intermediate appellate state court is a datum for ascertaining the state law question.  *Stickley v. State Farm Mutual Automobile Insurance Co.*, 505 F.3d 1070  (10th Cir. 2007).  The Court is unaware of any Utah State Supreme Court or intermediate court cases interpreting U.C.A. § 78B-5-505(1)(a)(xiii).  Neither of the parties to this dispute cited to any cases decided by a court of the State of Utah.  Where no state cases exist on a point, a federal court must turn to other state court decisions, federal decisions, and the general weight and trend of authority to interpret the state law question.  *Estate of Harris v. Harris*, 218 F.3d 1140 (10th Cir. 2000).  This Court will approach the analysis accordingly.

The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.  In such cases, the intention of the drafters, rather than the strict language, controls.  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 243 (1989).  It is well established that when a statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).  Both clauses found under U.C.A. § 78B-5-505(1)(a)(xiii) avail themselves to interpretation under the plain meaning rule.

The first clause of the Statute operates to allow an exemption for proceeds and avails of any unmatured life insurance contracts.  Neither party argues that the first clause of the Statute

4

does not serve to grant an exemption of the Debtors' Policies.  This Court finds that the plain language of the first clause grants an exemption of the proceeds and avails of the Policies owned by the Debtors.

The second clause of the Statute serves to exclude from exemption, any payments made on life insurance contracts during the one year immediately preceding a creditor's levy or execution.  In this case, the Debtors made payments on the Policies during the one year immediately preceding the Petition Date that total $2,712.00.  The Trustee argues that under the terms of the second clause of the Statute, the entire amount of the $2,712.00 paid by the Debtors during the one year immediately preceding the Petition Date must be excluded from the Debtors' exemption.  The Debtors argue that only payments allocated to the investment savings component of the Policies should be excluded from the Debtors' claimed exemption.  For the reasons set forth below, the Court does not address the argument advanced by the Debtors.

The Trustee alleges that the Debtors filed for protection under the bankruptcy laws on August 20, 2009 and seeks to exclude from exemption all payments the Debtors made on the Policies within one year prior to the Petition Date.  The flaw in the Trustee's argument is that the Statute does not provide for the exclusion of payments made on a life insurance contract during the one year prior to the filing of a bankruptcy petition.  The Statute excludes payments made on a life insurance contract during the one year immediately preceding a creditor's levy or execution.  By its own terms, the second clause of the Statute only comes into operation when there has been a creditor's levy or execution.  The Statute is not open ended and does not invite additional triggering events.

5

Although the Trustee appears to treat the Debtors' voluntary bankruptcy petition as a creditor's levy or execution for purposes of the Statute, another canon of statutory construction prohibits this Court from doing so. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last and judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (citations omitted).

Any argument that the Utah Legislature may have meant to include the event of a bankruptcy petition as a triggering event for the second clause of the Statute is further dispelled by another well settled canon of statutory interpretation. Where legislation includes particular language in one section of a statute but omits it in another section of the same statute, it is generally presumed that the legislation was intentionally and purposely written in the disparate inclusion or exclusion. *Russello v. United States*, 464 U.S. 16, 23 (1983). Here, the neighboring section of the Statute, U.C.A. § 78B-5-505(1)(a)(xiv), grants an exemption in funds contributed into various types of retirement plans, but under U.C.A. § 78B-5-505(1)(b)(ii) any amount contributed within one year "before a debtor files for bankruptcy" is excluded from the exemption. Without a doubt, the legislature was mindful of the prospect of a debtor filing for bankruptcy when the Utah Exemptions Act, U.C.A. § 78B-5-505, was drafted. That the Utah Legislature chose to use the filing of bankruptcy to exclude certain contributions made within one year of an exemption claimed under § 78B-5-505(1)(a)(xiv) and chose not to use the filing of bankruptcy to exclude payments made within one year of an exemption claimed under § 78B-5-505(1)(a)(xiii) has meaning. Applying the plain meaning of the Statute does not produce a

6

result demonstrably at odds with the intention of the drafters, and this Court will not second guess the legislative intent of the Utah Legislature in the face of such a clear disparity.

**II.    Trustee's Rights and Powers Under 11 U.S.C. § 544(a)(2).**

In his Rule 59 motion, the Trustee argued that under § 544(a)(2) "the Trustee is given all rights and powers of a levying or executing creditor," and because he has all the rights and powers of a levying or executing creditor the Debtors are not entitled to exempt any payments made on the Policies during the one year immediately preceding the Debtors' bankruptcy petition.

Section 544(a)(2) provides:

> (a) The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
>
> . . . .
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]

The Trustee's assertion that § 544(a)(2) gives a trustee all the rights and powers of a levying or executing creditor is not accurate. First, the term levy or levying is not used in § 544(a)(2). Second, under § 544(a)(2) a trustee does not have the rights and powers of an executing creditor but has the rights and powers of a creditor "that obtains . . . **an execution against the debtor that is returned unsatisfied**." (emphasis added). There is a difference between a "levy", an "execution," and an "execution that is returned unsatisfied."

An "execution" is a legal remedy for the enforcement of a judgment. An execution is effected through the seizure of property, which constitutes a levy on the property and creates a lien. The lien is satisfied by payment of the judgment amount or the sale of the levied property at an execution sale. An execution is initiated by a writ issued by the court that authorizes the sheriff to levy upon the property of the judgment debtor. The writ constitutes a command of the court directed to the sheriff to carry out the mandate of the writ.

In Utah, a "writ of execution" is available under Utah R.Civ.P. 64E(a) "to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money." To obtain a writ of execution, the plaintiff must file an application stating (1) the amount of the judgment or order and the amount due on the judgment or order; (2) the nature, location and estimated value of the property; and (3) the name and address of any person known to the plaintiff to claim an interest in the property.

A "levy," as defined in Utah Code Ann. § 78B-5-502(5) "means the seizure of property pursuant to any legal process issued for the purpose of collecting an unsecured debt." Thus, the seizure of property pursuant to a writ of execution constitutes a "levy".

An "execution that is returned unsatisfied" is a writ returned *nulla bona*. *Harkin v. Brundage*, 276 U.S. 36, (1928), *Atlas Corp. V. DeVillers*, 447 F. 2d 799 (10th Cir. 1971), *Davis County v. Progressive Northwest Insurance*, 197 P.3d 669 (Utah 2008). If a writ of execution is returned unsatisfied, there was no property available for levy. Because there is no property available for levy, a writ of execution returned unsatisfied does not create a lien[2] on any

---

[2]The Trustee's argument that he has the rights and powers of a levying or executing creditor is more akin to the Trustee's § 544(a)(1) powers. Section 544(a)(1) gives the trustee the rights and powers

8

property. A creditor that has an execution returned unsatisfied is a creditor that has exhausted its legal remedies. The legislative history of § 544 is helpful on this point.

The House Report in 1966 explained:

> Prior to 1950, the trustee specifically had the rights of a judgment creditor holding an execution returned unsatisfied insofar as property not coming within the custody of the court was concerned. It is now feared, however, that the trustee may be denied remedies which, under State law, are available only to creditors holding executions returned unsatisfied. Since the trustee often gains title to property the extent and location of which is unknown to him, he may wish to resort to discovery proceedings. Yet, in some states, if the trustee does not have the rights of a judgment creditor holding an execution returned unsatisfied, such proceedings are not available to him under State law. In order to assure that the trustee is given the rights and powers of a judgment creditor holding an execution returned unsatisfied, section 6 of this bill specifically grants those rights and powers to him. H. Rep. No. 89-686 (1965); S. Rep. No. 89-1159 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2032.

In Utah there are statutory remedies that are available to creditors holding a writ of execution returned unsatisfied. *See* U.C.A. § 31A-41-301 and U.C.A. § 61-2a-5.

**III.    The Trustee as a Hypothetical Party.**

When a bankruptcy trustee is exercising rights and powers under Section § 544, the trustee is commonly referred to as a hypothetical creditor. *In re Colon*, 563 F.3d 1171,1174 (10th Cir. 2009); *In re Silver*, 303 B.R. 849, 861 (10th Cir. BAP 2004). The provisions of § 544(a)(1) and (2) give the bankruptcy trustee the rights and powers of hypothetical creditors (§ 544 Creditors) and § 544(a)(3) gives the bankruptcy trustee the rights and powers or a hypothetical *bona fide* purchaser of real property but these provisions do not create actual

---

of a creditor that obtains a judicial lien. Section 101(36) defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." This status is of no help to the Trustee in his objection to the Debtors' exemption because Utah Code Ann. § 78B-5-502(3) defines "exempt" as "protected from subjection to a judicial process to collect an unsecured debt."

persons or events. *In re Weiman*, 22 B.R. 49, 53 (9th Cir. BAP 1981). The § 544 Creditors and the events giving rise to the status of § 544 Creditors are fictions. For example, § 544(a)(1) gives a bankruptcy trustee the rights and powers of a creditor that obtains a judicial lien but does not create a judgment or a creditor that holds a judicial lien. Section 544(a)(3) gives a bankruptcy trustee the rights and powers of a *bona fide* purchaser of real property but does not create a sale of real property or a purchaser of real property. Similarly § 544(a)(2) gives a bankruptcy trustee the rights and powers of a creditor that obtains a writ of execution returned unsatisfied but does not create a writ of execution returned unsatisfied or a creditor that obtains a writ of execution returned unsatisfied.

### IV.     Applicability of § 544(a)(2) to the Utah Insurance Policy Exemption Statute.

A creditor's levy or a creditor's execution are the only two events that trigger the exclusion from exemption under U.C.A. § 78B-5-505(1)(a)(xiii). Section 544(a)(2) gives the Trustee the rights and powers of a creditor that obtains a writ of execution returned unsatisfied; it does not give the Trustee the rights and powers of a creditor that has levied or executed on the debtor's property. For this reason alone, § 544(a)(2) has no application to U.C.A. § 78B-5-505(1)(a)(xiii).

There are additional reasons why § 544(a)(2) is inapplicable to U.C.A. § 78B-5-505(1)(a)(xiii). Under § 544 a bankruptcy trustee is only a hypothetical party. To the extent a bankruptcy trustee's § 544 standing is based on an event, it likewise is only a hypothetical event.

10

U.C.A. § 78B-5-505(1)(a)(xiii) is unambiguous and references an actual levy or execution. Section 544(a)(1) and (2) which create rights and powers of a hypothetical creditor is inapplicable to the U.C.A. § 78B-5-505(1)(a)(xiii) exception which is triggered by actual events.

Additionally, it would be incongruous to apply Utah's writ of execution provisions under Utah R.Civ.P. 64E(a) to § 544(a)(2) to create a triggering event under U.C.A. § 78B-5-505(1)(a)(xiii). The incongruity is as follows: In Utah, because an application for a writ of execution must state the nature, location, and estimated value of the property to be executed upon, the property must exist. Under § 544(a)(2), because the bankruptcy trustee's standing as a hypothetical creditor is based upon a writ of execution returned unsatisfied the property cannot exist. Because the property can not exist, the nature, location and estimated value cannot be stated and no writ of execution can be issued. Because no writ of execution can be issued, the U.C.A. § 78B-5-505(1)(a)(xiii) exception to exemption cannot be triggered by a execution.

## V.     Use of § 544 Rights and Powers to Object to a Debtor's Exemptions.

Federal Rule of Bankruptcy Procedure 4003(b)(2) specifically provides that the trustee, in his capacity as representative of the estate, may object to a debtor's claim of exemption. The Trustee argues that his § 544(a)(2) rights and powers give him an additional basis to object to the Debtors' claim of exemption. "Use of the rights and powers given the trustee by [§] 544 for purposes other than avoiding transfers to creditors has been rare if not anomalous." *In re Weiman* at 53. Reading § 544 in its totality, and the incorporation of § 544 into other sections of the Bankruptcy Code such as §§ 349, 546, 550, and 551, reinforces the conclusion that the purpose of the statute is to give the bankruptcy trustee certain avoiding powers.

11

The substance and spirit of § 522(b) precludes the Trustee from employing the fiction created by § 544 to defeat the Debtors' claimed exemption. Congress clearly provided in § 522(b) that state law may determine the exemptions that apply in bankruptcy cases. The Trustee's argument is that notwithstanding the Bankruptcy Code's provision that state law may determine the exemptions that apply in bankruptcy cases, the exemptions allowed by state law may be limited by the Bankruptcy Code. To allow a bankruptcy trustee to use a fiction created by the Bankruptcy Code to defeat an exemption provided for and contemplated by the Bankruptcy Code is inconsistent. Statutes should be construed so that their provisions are harmonious with each other. *See Negonsott v. Samuels*, 933 F.2d 818, 819 (10th Cir. 1991) *aff'd* 507 U.S. 99 (1993); *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1184 (6th Cir. 1982). Congress has deferred to the States the determination of applicable bankruptcy exemptions. Given Congress' decision on this issue it is doubtful that Congress intended to allow the provisions of the Bankruptcy Code to create unforseen consequences which would impact or limit applicable bankruptcy exemptions as determined by the States. In the absence of express Congressional intent this Court should not construe provisions of the Bankruptcy Code to limit state law exemptions allowed by Congress in the Bankruptcy Code.

Pursuant to Fed. R. Bk. P. 4003(b)(1), a "party in interest may file an objection to the list of property claimed as exempt...." "Party in interest" is not a defined term in the Bankruptcy Code or the Rules of Bankruptcy Procedure. There is little doubt that a bankruptcy trustee in his capacity as representative of the estate is a party in interest, but the trustee as a hypothetical party is not a party in interest. *In re Eichhorn*, 338 B.R. 793, 799 (S.D. Ill. 2006). A § 544 Creditor is a fiction and has no claim against the bankruptcy estate and has no interest to protect.

12

In his capacity as representative of the estate a bankruptcy trustee may object to a debtor's exemptions, but the trustee may not use the rights and powers of a hypothetical creditor or a fiction to object to a debtor's exemptions. *Id.* See also *In re Weiman*, at 49.

## VI. A Waiver of an Exemption Must be Intentional and Clear.

The Trustee claims that the Court erred in allowing the Debtors' exemption because the Debtors waived their exemption when they conceded some portion of the payments made within the year prior to the bankruptcy are not exempt. The Debtors dispute the Trustee's conclusion. The Debtors contend that their arguments were intended to reduce any amount that was not exempt and were not intended to be a waiver of amounts they are entitled to exempt.

The Debtors claimed the full value of the Policies exempt in their "Schedule C - Property Claimed As Exempt". At the initial hearing they agreed on the amount of the premium payments within one year prior to their bankruptcy but continued to argue that the non-exempt amounts be limited to the amount paid to cash value and not to premiums. Waiver of exemptions must be clear and intentional. *Oliver v. Mitchell*, 376 P.2d 390 (Utah 1962). At no time did the Debtors offer an intentional waiver of an exemption to which they are entitled.

## CONCLUSION

The Debtors have claimed an exemption of all proceeds and avails of their two universal life insurance policies. Under U.C.A. § 78B-5-505(1)(a)(xiii) in the absence of a creditor's levy or execution, no amount of the proceeds or avails of the Policies are excluded from the amount claimed exempt. Because the Trustee's rights and powers as a hypothetical creditor under § 544 are based on hypothetical events Section 544(a)(2) is inapplicable to U.C.A. § 78B-5-

13

505(1)(a)(xiii). In the absence of express Congressional intent the Trustee's rights and powers as a hypothetical creditor under § 544 may not be used to limit state law exemptions provided for and allowed by Congress in § 522. The Trustee's objection to the Debtors' exemption of the proceeds and avails of the Policies should be and has been denied. Based on the foregoing the Trustee's Rule 60 motion and Rule 59 motion to alter or amend the Court's prior order will be denied.

--------------------------------------------END OF DOCUMENT--------------------------------

ORDER SIGNED

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing Memorandum Decision will be effected through the Bankruptcy Noticing Center to the following parties.

Coy R. Duffin
Jeanie Marie Duffin
1588 Dean Ave.
Tooele, UT 84074

Geoffrey C. Dietrich
G.C. Dietrich Law, P.C.
1785 East 1450 South, Suite 240
Clearfield, UT 84015

Stephen W. Rupp
McKay, Burton & Thurman
170 South Main Street, Suite 800
Salt Lake City, UT 84101